**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CASE NO. 1:15-CV-00031-LLK**

**JOHNNY E. GILLOCK**                                                                                                   **PLAINTIFF**

**v.**

**CAROLYN W. COLVIN, Commissioner of Social Security**                                 **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a complaint seeking judicial review of the final decision of the Social Security Administration denying his claim for supplemental security income benefits. The fact and law summaries of the parties are at Docket Numbers 16 and 20.

The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. This matter is ripe for determination.

Because the Administrative Law Judge's (ALJ's) denial decision was supported by substantial evidence and was in accord with applicable legal standards, the final decision of the Commissioner is AFFIRMED, and Plaintiff's complaint is DISMISSED.

### Background facts and procedural history

Plaintiff was born in June, 1971. AR, p. 29.

Although he was in regular classes in school, his grades were poor and he frequently failed classes. AR, p. 226. He quit school at age 18 with a tenth-grade education and subsequently obtained a GED. AR, pp. 180 and 406. There are no school IQ test results in the administrative record.

Plaintiff has been incarcerated off and on since 1995 and was last released in August, 2011. AR, pp. 27 and 405. He has no past relevant work experience and lives with his mother. AR, pp. 23 and 29.

In the 1980s, Plaintiff fell from a horse and fractured his left, lower occipital skull. AR, pp. 47 and 52.

In April, 1994, at age 22 (after the developmental period, which ends at age 21), William Weiss, Ph.D., tested Plaintiff's IQ to be the 40s. AR, p. 461. Dr. Weiss noted the history of head injury and the possibility of "organic brain syndrome." AR, p. 462.

Plaintiff alleges disability due to intellectual impairment caused by closed head injury. He also alleges physical disability due to the residual effects of various injuries resulting in chronic low back pain with radiculopathy into the left lower extremity, broken collarbone with left shoulder pain, and surgical insertion of pins and plates into the right hand and left ankle. AR, pp. 24, 54, 242, and 468.

In July, 2007, Ollie Dennis, Ed.D., tested Plaintiff's IQ, and the results were again in the 40s. AR, p. 237. A valid IQ score in the 40s is extremely low and such individuals are unable to function independently and require life-long supervision. AR, p. 372. Dr. Dennis performed testing that supported his impression that Plaintiff was malingering, not making a good-faith effort during testing, and attempting to "give the impression that he is much more limited than he actually is" -- all for secondary gain. AR, p. 239.

The ALJ found all IQ test results to be invalid due to malingering. AR, p. 28.

The ALJ denied Plaintiff's disability claim at the fifth and final step of the sequential evaluation process based upon a vocational hypothetical that contemplated an individual who can perform no greater than light work[1] and can "frequently climb ramps or stairs ... occasionally climb ladders, ropes, or scaffolds ... constantly balance ... frequently stoop, kneel, crouch, or crawl." AR, pp. 49-50. Intellectually, the hypothetical contemplated an ability to "understand, remember, and carry out simple

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 416.967(b). The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time. SSR 83-10.

2

instructions ... make judgment on simple work related decision [and] maintain attention and concentration for two hour segments over an eight hour period." AR, p. 50.

The ALJ found that Plaintiff can perform a significant number of jobs in the national economy, i.e., light hand packager, cashier II, and sorter. AR, pp. 30 and 50.

Plaintiff presents three contentions upon judicial review.

### The ALJ was not required to label as "severe" Plaintiff's intellectual impairment.

First, he contends that the ALJ's finding that he has "the following severe[2] impairments: chronic low back pain, osteoarthritis of the knee, major depressive disorder, and panic disorder with agoraphobia" (AR, p. 22) is unsupported because he also suffers from severe "moderate mental retardation and organic mental disorder with a history of closed head injury." DN 16, p. 2.

Once an ALJ makes a finding of at least one severe impairment, he must "consider limitations and restrictions imposed by all of a claimant's impairments, even those that are not 'severe.'" Social Security Ruling (SSR) 96-8p, 1996 WL 374184 at *5. Conversely, if the ALJ considers all of the claimant's impairments at the remaining steps of the sequential evaluation process, his not including an additional severe impairment "does not constitute reversible error." *Maziarz v. Secretary*, 837 F.2d 240, 244 (6th Cir. 1987); see also *McGlothin v. Commissioner*, 299 Fed.Appx. 516, 522 (6th Cir. 2008) (stating that it is "legally irrelevant" that the ALJ found an impairment to be non-severe because he acknowledged other severe impairments and completed the sequential evaluation).

In completing the sequential evaluation process, the ALJ found that "[w]hile the claimant's credibility is highly questionable regarding cognitive functioning, the undersigned has imposed

---

[2] "Severe" is a term of art in Social Security disability law meaning approximately "vocationally significant." The Sixth Circuit construes the Step-2 severity regulation as a "de minimis hurdle," *Rogers v. Commissioner*, 486 F.3d 234 n. 2 (6th Cir. 2007), intended to "screen out totally groundless claims." *Farris v. Secretary*, 773 F.2d 85, 89 (6th Cir. 1985). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe" and proceed with the sequential evaluation process. SSR 96-3p.

3

limitations to simple, routine, and repetitive work." AR, p. 29.[3]  In so finding, the ALJ reasonably accommodated the limitations resulting from any unlabeled "severe" intellectual impairment.

Alternatively, Plaintiff has failed to identify evidence, which the ALJ was required to accept, of a vocationally-significant limitation in excess of the ALJ's mental residual functional capacity (RFC) finding. AR, p. 24.

**Plaintiff failed to prove that his intellectual impairment satisfies Listing 12.05.**

Next, Plaintiff contends that the ALJ erred in finding that he "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, subpart P, Appendix 1" (AR, p. 22) inasmuch as "Listing 12.05B, 12.05C, and 12.05D all apply to IQ scores in the claimant's tested range [in the 40s]." DN 16, p. 5.

The burden of proof to show that a medical impairment meets or equals the clinical criteria of a listed impairment (relevant at step three of the sequential evaluation process) is upon the claimant. *Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir.2011) (burden of proof shifts to Commissioner at step five). Because a finding that the Listing is satisfied results in a conclusive presumption of disability, a claimant must show that all of the specified medical criteria are satisfied precisely. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To satisfy Listing 12.05, a claimant must first satisfy the diagnostic description, or capsule definition, of the introductory paragraph, which defines "intellectual disability" as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment

---

[3] Additionally, the ALJ found that: "The claimant would be able to understand, remember, and carry out simple instructions; make judgments on simple work related decisions; interact appropriately with the public, supervisors, and coworkers in a routine work setting; respond to usual work situations and to changes in a routine work setting; and complete a normal workweek without excessive interruptions from psychologically or physically based symptoms." AR, p. 24.

before age 22." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir.2001).  The claimant must demonstrate:  (1) subaverage intellectual functioning; (2) onset before age 22; and (3) adaptive-skills limitations.  *Hayes v. Commissioner*, 357 Fed.Appx. 672, 675 (6th Cir.2009).  In addition, the claimant must satisfy "any one of the four sets of criteria" in Listing 12.05.  See *Foster* at 354 ("[A] claimant will meet the listing for mental retardation only if [his] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria").

Plaintiff has not presenting IQ test results or other probative evidence from the period before age 22 and thus he has not precisely satisfied the diagnostic description of Listing 12.05.

Alternatively, each subsection of Listing 12.05 requires a "valid" IQ test result.  In *Longworth v. Commissioner*, 402 F.3d 591, 597 (6th Cir.2005), the Sixth Circuit found that the ALJ properly rejected IQ test results in the 50s and found that plaintiff suffered only from difficulty concentrating in light of findings by the evaluators that she was "malingering" during testing and "intentionally feign[ing] her cognitive impairments."

The ALJ had a substantial basis for finding that Plaintiff's intellectual impairment does not satisfy Listing 12.05.  AR, p. 28.

**The ALJ was not required to defer to the treating physician's disabling opinions.**

Plaintiff's final contention is that the ALJ's RFC finding, which limited him to light work plus the intellectual limitations described above, is unsupported in light of his treating physician's opinion.  In a transcribed statement given to Plaintiff's counsel in July, 2013, Roger Williams, M.D., indicated that "I personally would not suggest that [Plaintiff] do any lifting over 5 to 10 pounds on a regular basis," "I would imagine that he would probably need to lie down at least once every two to three hours," and "speaking with Johnny, it would not surprise me if those [IQ] test [results in the 40s] were in fact valid." AR, p. 229-230.

5

The ALJ gave these opinions "little weight" because they are not "supported by the objective medical evidence" and appear to be motivated by an "effort to assist a patient with whom [the physician] sympathizes for one reason or another."  AR, p. 29.  Plaintiff contends that Dr. Williams' opinions were entitled to controlling weight.

A treating physician's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence."  20 C.F.R. § 416.927(c)(2).

As a threshold matter, some of Dr. Williams' opinions do not appear to be genuine medical opinions, i.e., statements that reflect "what you can still do despite [your] impairments."  20 C.F.R. § 416.927(a)(2).  Dr. Williams' not being "surprised" by a low IQ test result does not speak to the validity of testing.

Dr. Williams attributes Plaintiff's lifting restrictions and need to lie down solely to unspecified "back problems," which are "[Plaintiff's] only, to my knowledge, physical attribute that would interrupt him during the course of the [work] day."  AR, p. 230.  The qualifiers of "I personally would not suggest" and "I would imagine" render the restrictions more akin to personal opinion or an assessment of likely future behavior than a statement of what Plaintiff is capable (with good effort) despite his impairments.

In any event, "back problems" lacks the medically-acceptable clinical and laboratory diagnostic techniques that entitle a treating physician opinion to controlling weight.  In light of his credibility assessment and view of the medical and non-medical evidence as a whole, the ALJ identified good reasons for giving Dr. Williams' disabling opinions little weight.

**Order**

The final decision of the Commissioner is AFFIRMED, and Plaintiff's complaint is DISMISSED.